UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RYAN MASTERS,<br><br>　　　　　Defendant. | Case No. 2:12-cr-00145-MMD-GWF<br><br>ORDER<br><br>(Defendant's Motion to Preclude the Government from Offering into Evidence E-mail Inquiry to American Databank Group<br>– dkt. no. 74)<br><br>(Defendant's Motion to Exclude Untimely Disclosed Audio Files – dkt. no. 75)<br><br>(Defendant's Motion in Limine to Exclude Electronically Stored Evidence or in the Alternative Allow for Voir Dire of the Witnesses Introducing Electronic Evidence Outside the Presence of the Jury<br>– dkt. no. 81)<br><br>(Defendant's Motion to Reconsider – dkt. no. 82). |

## I. SUMMARY

Before the Court are Defendant's Motion to Preclude the Government from Offering into Evidence E-mail Inquiry to American Databank Group (dkt. no. 74), Motion to Exclude Untimely Disclosed Audio Files (dkt. no. 75), Motion in Limine to Exclude Electronically Stored Evidence or in the Alternative Allow for Voir Dire of the Witnesses Introducing Electronic Evidence Outside the Presence of the Jury (dkt. no. 81), and Motion to Reconsider (dkt. no. 82). For reasons stated below, all motions are denied.

## II. BACKGROUND

Defendant Masters was indicted in the above criminal case involving counts of Possession of Fifteen or More Counterfeit or Unauthorized Devices. The basis for this prosecution involved the arrest and prosecution of Masters in state court. In that case, Masters was detained and arrested at a local BestBuy. During the local police's investigation, the police obtained a search warrant for Masters' vehicle and discovered numerous electronic devices, including laptops. Sometime thereafter, the Federal Bureau of Investigations (FBI) took possession of these devices and conducted a forensic analysis on them. The government alleges that the forensic analysis establishes that Defendant was involved in illegally accessing certain electronic devices. The government used the information from the electronics, as well as other evidence, to obtain the indictment.

## III. MOTION IN LIMINE LEGAL STANDARD

Three out of the four pending motions are motions in limine. A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." Black's Law Dictionary 1109 (9th ed. 2009). Although the Federal Rules of Evidence ("FRE") do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).

A motion in limine is a request for the court's guidance concerning an evidentiary question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C & E Servs., Inc., v. Ashland, Inc.*, 539 F.

2

1  Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the
2  evidence must be inadmissible on all potential grounds." *See, e.g., Ind. Ins. Co. v. Gen.*
3  *Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high
4  standard, evidentiary rulings should be deferred until trial so that questions of
5  foundation, relevancy and potential prejudice may be resolved in proper context."
6  *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This
7  is because although rulings on motions in limine may save "time, costs, effort and
8  preparation, a court is almost always better situated during the actual trial to assess the
9  value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D.
10 Kan. 2007).

11 In limine rulings are provisional. Such "rulings are not binding on the trial judge
12 [who] may always change his mind during the course of a trial." *Ohler v. United States*,
13 529 U.S. 753, 758 n. 3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings
14 are always subject to change, especially if the evidence unfolds in an unanticipated
15 manner). "Denial of a motion in limine does not necessarily mean that all evidence
16 contemplated by the motion will be admitted to trial. Denial merely means that without
17 the context of trial, the court is unable to determine whether the evidence in question
18 should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

19
20 **IV. MOTION TO PRECLUDE THE GOVERNMENT FROM OFFERING INTO EVIDENCE E-MAIL INQUIRY TO AMERICAN DATABANK GROUP**

21 **A.   Summary**

22 The government has produced a copy of an e-mail (government's proposed
23 Exhibit 112) in which a "Mr. Zeigler" made an inquiry to a company called American
24 DataBank Group for a "Nationwide Wants and Warrants for Ryan Masters." Defendant
25 argues that the e-mail is either not relevant under Fed. R. Evid. 401 or constitutes
26 inadmissible hearsay under Fed. R. Evid. 802.

27 The government argues that this information is relevant because when Defendant
28 was arrested, he repeatedly asked an FBI agent when his federal arrest warrant was

issued. The agent eventually told him the date and asked him why it mattered; Defendant responded that it mattered because he subscribed to a service that would tell him if an arrest warrant was issued. The government argues that the e-mail is relevant to confirm that the HP Pavilion dm4-3055dx laptop it was found on belongs to Masters. The government also argues that Exhibit 112 is relevant to prove that Defendant knew his acts were criminal.

### B.   Analysis

Evidence is relevant if it makes a fact of consequence more or less probable. Fed. R. Evid. 401. The e-mail makes it more likely that the laptop in question, which contains many of the files relevant to this case, belonged to Masters. This is because, as the government explains, the e-mail demonstrates that "(a) Masters said he subscribed to a service that would tell him if a warrant was issued for his arrest, and (b) Exhibit 112 is an E-mail that was found on this computer, and (c) the E-mail itself refers to a service that notifies the user of "Nationwide Wants and Warrants for Ryan Masters."

Nor does Exhibit 112 contain hearsay. First, so long as the government can establish that the "Mr. Ziegler" was in fact a pseudonym for Mr. Masters, the document is clearly non-hearsay under Fed. R. Evid. 801(d)(2)(A), which holds that party admissions are not hearsay.[1] Second, the government is correct that the e-mail chain records an agreement between two parties, which is a non-verbal act and non-hearsay. *See* Fed. R. Evid. 801(c) advisory committee's notes. American Databank confirms receipt of a request for service, offers to provide services if Mr. Ziegler accepts this offer via e-mail, and Mr. Ziegler accepts the agreement.

Third, the evidence is not hearsay because it is not offered for the truth of the matter asserted. It is unimportant whether or not the contents of the e-mail are true; as the government asserts, the e-mail goes towards demonstrating that the laptop in

---

[1] Alternatively, should the government demonstrate that a "Mr. Ziegler" sent the e-mail at Defendant's direction, the e-mail would likely be non-hearsay under Fed. R. Evid. 801(d)(2)(C) or (D).

4

question belonged to Masters. It is therefore enough that Masters sent the e-mail in question; the truth of its contents is not important under this theory of relevance.[2]

For these reasons, Defendant's Motion to Preclude is denied.

## V.  MOTION TO EXCLUDE UNTIMELY DISCLOSED AUDIO FILES

### A. Summary

On October 22, 2012, eight days before trial, the government informed Defendant that it gained possession of approximately forty-one telephone calls made by Masters while he was in pretrial custody in May 2011. These calls were recorded and now exist on compact disk. The disk contains hours of audio recordings. The calls were not on the government's proposed exhibit list, but the government plans to introduce two of the phone calls as part of its rebuttal case.[3] (Dkt. no. 83 at 3.)

Defendant argues that the government should have disclosed these files at the outset of this case as the government or its agents have been in possession of the recordings since the April 2012 indictment. Moreover, Defendant argues that the late disclosure violates Local Rule 16-1 and the parties Joint Discovery Agreement (dkt. no. 14). The Joint Discovery Agreement states that no later than ten days before trial, the parties "will identify recordings, transcripts of recordings, or portions thereof, that will be

---

[2] Defendant argues that the evidence is not relevant to show Masters' consciousness of guilt. Defendant notes that Masters also had criminal charges at the state level during the time period in which Masters contacted American Databank (March and April 2012), and that therefore the government cannot show that these e-mails demonstrate Masters' consciousness of guilt as it relates to the federal case against him. (Dkt. no. 74.) However, it does not appear that the government intends to offer this evidence to demonstrate Masters' consciousness of guilt, but rather his ownership of the laptop. Even were the government to introduce the evidence to help establish Defendant's consciousness of guilt, it would be relevant for that purpose so long as the government can demonstrate that its probative value is not substantially outweighed by its prejudicial effect. *See United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996). However, because it does not appear as if the government will introduce the American Databank e-mail chain to demonstrate consciousness of guilt, the Court declines to make a ruling on the evidence's admissibility for the purposes of consciousness of guilt at this time.

[3] At the October 29, 2012 hearing, the government informed the Court that it may not choose to introduce the audio tapes into evidence, but if it did, the government would introduce the tapes during its rebuttal case.

offered at trial." (Dkt. no. 14 at 2.)  However, that same document includes a limitation stating that the disclosure deadline applies to objects, documents, and other disclosure matters that are in the possession, custody, or control of the parties at the time the obligation to disclose arises.  (*Id.* at 3.)

The government asserts that it only recently became aware of the audio files, and immediately produced them upon discovery.

### B. Legal Standard

Defendant incorrectly cites to several cases holding that the Ninth Circuit requires disclosure of exculpatory evidence.  Disclosure is not at issue here; the government has, in fact, disclosed the audio tapes.  Rather, *timely* disclosure is the issue.

In *Brady v. Maryland*, 373 U.S. 83, 86 (1963), the Supreme Court recognized a prosecutor's obligation to disclose exculpatory evidence, whether substantive or for impeachment purposes, when such evidence is material to the defense.  "To establish a *Brady* violation, a defendant must show that the evidence was favorable to him, either because it is exculpatory or because it is impeaching; the evidence must have been suppressed by the prosecution, willfully or inadvertently; and the defendant was prejudiced by the non-disclosure."  *Dotson v. Scribner*, 619 F. Supp. 2d 866, 873 (C.D. Cal. 2008) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

"Brady does not necessarily require that the prosecution turn over exculpatory material before trial."  *Dotson*, 619 F. Supp. 2d at 874.  Rather,

> [t]o escape the Brady sanction, disclosure 'must be made at a time when disclosure would be of value to the accused.'"  *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir.1988) (emphasis in original) (quoting *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir.1985)).  "As long as ultimate disclosure is made before it is too late for the defendant[ ] to make use of any benefits of the evidence, Due Process is satisfied."  *United States v. Scarborough*, 128 F.3d 1373, 1376 (10th Cir.1997) (quoting *United States v. Warhop*, 732 F.2d 775, 777 (10th Cir.1984)); *see also United States v. Anderson*, 391 F.3d 970, 975 (9th Cir. 2004) (no *Brady* violation by government's delay in identifying two witnesses; defense secured the appearance of witnesses and had opportunity to recall other witnesses who could have been impeached); *United States v. Gamez-Orduno*, 235 F.3d 453, 461-62 (9th Cir. 2000) (delayed disclosure cured by granting defense a continuance to prepare); *United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir.1996) (no prejudice to defendant from government's

> untimely production of officer's rough notes reflecting discrepancies with his testimony; defense eventually received the rough notes and was able to fully cross-examine the officer about discrepancies in his report); *United States v. Manning*, 56 F.3d 1188, 1199 (9th Cir.1995) . . .

*Id.*

### C. Analysis

Defendant asserts that the telephone calls have been in the possession of government agents since the inception of this case, and because disclosure occurred on the eve of trial, the "only remedy" is to prohibit the late introduction of the evidence. (Dkt. no. 75 at 2-3.)

The government counters that the files should not be excluded because (1) they do not contain exculpatory evidence, but inculpatory evidence;[4] and (2) the "imputed knowledge" doctrine does not apply because the detention facility was not a part of the prosecution team.

Assuming that the audio tapes include exculpatory evidence, the government is correct that the "imputed knowledge" requirement only applies when the government agency is part of the prosecution team. *See United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995). As the detention facility was not part of the prosecution team, Defendant cannot assert that the government had knowledge of the tapes prior to disclosure. Therefore, so long as the Court determines that disclosure was not so untimely that it prejudices Defendant, the evidence may be admitted.

The government has demonstrated that the tapes were not in their possession or control prior to the discovery deadline. Therefore, the deadline requirement outlined in the Joint Discovery Agreement does not apply. (*See* dkt. no. 14 at 3.) Further, Defendant will not be prejudiced by the late disclosure. He has had eight days to review the audio tapes. And at the October 29, 2012, hearing, the government informed the Court that it would inform Defendant's counsel which two audio tapes it planned on

---

[4] In fact, Defendant concedes that it is unsure whether or not the evidence contains exculpatory evidence. (Dkt. no 75 at n.1.)

1  entering into evidence by the next day, the first day of trial, at 9:00 AM.  The Court finds
2  that Defendant will have sufficient time to review the two telephone calls before the
3  government presents the evidence.  *See Dotson*, 619 F. Supp. 2d at 874.

4  For these reasons, Defendant's motion is denied.

**VI.  MOTION IN LIMINE TO EXCLUDE ELECTRONICALLY STORED EVIDENCE OR IN THE ALTERNATIVE ALLOW FOR VOIR DIRE OF THE WITNESSES, INTRODUCING ELECTRONIC EVIDENCE OUTSIDE THE PRESENCE OF THE JURY**

In Defendant's Motion, he seeks to exclude from evidence certain e-mails from the Veovis@gmail.com address as un-athenticated because those e-mails do not contain e-mail headers.  However, at the October 29, 2012, hearing, it became clear that Defendant only requests that the authentication of the government's Exhibit 19 occur outside the presence of the jury.[5]  Exhibit 19 shows an online chat conversation between the Veovis and TuzzTuzz e-mail addresses.

Defendant requests that the authentication of Exhibit 19 occur outside the presence of the jury because (1) the individual whom Defendant had an exchange with is a Pakistani national (the TuzzTuzz e-mail address); and (2) it is unclear that Defendant, and not someone else, was the person on the other end of the conversation (the Veovis e-mail address).

Neither of these arguments persuades the Court that authentication should occur outside the jury's presence.  As to Defendant's second concern above, it is the government's burden to demonstrate that it was in fact Defendant, and not a cohort of his, who was corresponding with the Pakistani national.  The government will either meet this burden of persuasion or not, but simply because there is a possibility that the government may not meet this burden does not require that the authentication questioning occur outside the jury's purview.  Moreover, as the government argued at

---

[5]The Court therefore construes the Motion as a request for authentication of exhibit 19 outside the presence of the jury,และ not as a request for the relief originally filed therein.

8

1   the October 29 hearing, on page 7 of exhibit 19, the Veovis e-mail address writes that
2   the sender is "Ryan Masters, Las Vegas, Nevada." This statement is likely sufficient to
3   satisfy the "prima facie showing of authenticity" required by the Rules of Evidence. *See*
4   *United States v. Tank*, 200 F.3d 627, 629 (9th Cir. 2000).

5   Defendant's other concern, as articulated in the October 29, 2012 hearing, is that
6   through authentication the jury will learn that Defendant was dealing with a Pakistani
7   national, and because of this it may be prejudiced into believing that Defendant's crime
8   involved terrorism or a related crime in addition to the charged crimes relating to credit
9   card fraud. Yet as discussed at the hearing, the government does not plan on focusing
10  on the nationality of the person behind the TuzzTuzz e-mail account during its
11  authentication of exhibit 19. Moreover, in neither his Motion nor his argument did
12  Defendant cite to case law providing the Court with a basis to conduct examination
13  outside the purview of the jury because of stereotype. Voir dire will be conducted to
14  identify and root out juror bias. *See Fields v. Brown*, 503 F.3d 755, 772 (9th Cir. 2007).
15  Beyond the safeguard of voir dire, the Court cannot be called upon to root out every
16  potential bias of every member of the jury. To ask the Court to do so based on no more
17  than a concern that there *may exist* a nation-wide stereotype of persons belonging to a
18  certain nationality asks the Court to effectively sanction such a stereotype, something
19  this Court will not do.

20  **VII.   MOTION TO RECONSIDER**

21  Defendant moves for the Court to reconsider its Order (dkt. no. 69) regarding an
22  *in camera* inspection of material concerning one of their witnesses, Detective Koop.

23  The Federal Rules of Criminal Procedure do not expressly permit motions for
24  reconsideration. *See United States v. Hector,* 368 F.Supp.2d 1060, 1062–63 (C.D. Cal.
25  2005), *rev'd on other grounds*, 474 F.3d 1150 (9th Cir. 2007). However, the Ninth Circuit
26  has stated that motions to reconsider should be treated as motions to alter or amend
27  under Federal Rule of Civil Procedure 59(e). *Sierra On-line, Inc. v. Phoenix Software,*
28  *Inc.*, 739 F.2d 1415, 1419 (9th Cir. 1984). The Circuit has identified three reasons

sufficient to warrant a court's reconsideration of a prior order: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact, to prevent manifest injustice. *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d. 1255, 1263 (9th Cir.1993). Upon demonstration of one of these three grounds, the movant must then come forward with "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw. 1996).

Defendant asks the Court to reconsider its order by referencing information about Det. Koop entirely unrelated to the information provided by the government for *in camera* review in its Motion. Further, Defendant fails to demonstrate that any of the three above-listed requirements for granting a motion to reconsider have been met. *See School Dist. No. 1J*, 5 F.3d. at 1263. Accordingly, Defendant's Motion to Reconsider is denied.

## VII. CONCLUSION

IT IS ORDERED that Defendant's Motion to Preclude the Government from Offering into Evidence E-mail Inquiry to American Databank Group (dkt. no. 74) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Exclude Untimely Disclosed Audio Files (dkt. no. 75), is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion in Limine to Exclude Electronically Stored Evidence or in the Alternative Allow for Voir Dire of the Witnesses Introducing Electronic Evidence Outside the Presence of the Jury (dkt. no. 81) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Reconsider (dkt. no. 82) is DENIED.

DATED THIS 30th day of October 2012.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE