UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br><br>RYAN MASTERS,<br><br>　　　　　　　　　　Defendant. | Case No. 2:12-cr-00145-MMD-GWF<br><br>ORDER<br><br>(Defendant's Rule 29 Motion for Judgment of Acquittal) |

　　　　This Order addresses Defendant Ryan Masters' motion for judgment of acquittal under Fed. R. Crim. P. 29. Masters made the motion at the close of the government's case based on two grounds: (1) the access devices were not usable under *United States v. Onyesoh*, 674 F.3d 1157 (9th Cir. 2012) and (2) venue is not proper in the District of Nevada. For the reasons discussed below, Masters' motion is denied.

**I.　BACKGROUND**

　　　　The Superseding Indictment charges Masters with one count of conspiracy to possess 15 or more access devices or unauthorized access devices and effecting fraudulent transactions with access devices that spans from May 2010 to April 2012. Masters is also indicted on four counts of possession of 15 or more access devices or unauthorized access devices on June 18, 2010 (count 2), June 27, 2010 (count 3), April 10, 2011 (count 4) and May 2, 2011. He is also indicted on one count (count 5) of aggravated identity theft.

## II.  LEGAL STANDARD

A criminal defendant's challenge to the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Jackson* requires a court, upon such a motion, to construe the evidence "in the light most favorable to the prosecution" to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original). When considering evidence in the light most favorable to the prosecution, "faced with a record of historical facts that supports conflicting inferences, a reviewing court must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (quoting *Jackson*, 443 U.S. at 326).

## III.  DISCUSSION

### A.  Venue

Masters argues that during most of the period of the alleged conspiracy he lived in Florida and the evidence is not clear as to where the alleged co-conspirator, Jack Newsome, resides. Masters thus argues that the government fails to establish by a preponderance of the evidence that any of the offenses was committed in the District of Nevada.

"To decide whether venue is proper in a district, we 'must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.'" *U.S. v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012) (quoting *U.S. v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999)). For continuing offenses, venue is "proper if an 'essential conduct element' of the offense begins in, continues into, or is completed in the charging district." *Id.*; 18 U.S.C. § 3237(a).

#### 1.  Count 1

Venue for the conspiracy count is appropriate in the District of Nevada if any of the alleged conduct committed in furtherance of the conspiracy begun, continued or

completed in Nevada. The government presented evidence to demonstrate that Masters was in Las Vegas, Nevada, when he communicated with the individual by the name of TuzzTuzz in the chat log marked as the government's Ex. 19. Masters explained to TuzzTuzz in the chat log on April 9, 2011, that he was in the car across from the WU (Western Union) and provided the MTCN and his location (as the sender) as Las Vegas, Nevada. (Ex. 19 at 7.) The government's Ex. 9 is a copy of the Western Union receipt with the same MTCN showing a Las Vegas, Nevada, address. In the chat log, Masters asked TuzzTuzz several times for "fulls" from the State of Nevada. (Ex. 19 at 8-9, 12,16, 24.) Masters went on to inform TuzzTuzz that "[w]e live in Las Vegas . . . read about my city online, everything here is 24 hours . . ." (*Id.* at 22.)  In April 2011, Masters was arrested at a Best Buy in Las Vegas after he attempted to buy gift cards using e-gift cards. The government has established by a preponderance of the evidence that Masters either began, continued or completed the acts in furtherance of the conspiracy in Nevada.

2.  Counts 2 and 3

Counts 2 and 3 involve possession of 15 or more access devices on or about June 18, 2010 and June 27, 2010. The government seeks to establish that Masters is guilty of aiding and abetting others with the intent to defraud. The government has demonstrated by a preponderance of the evidence through a series of emails exchanged between Masters and Newsome (using different email addresses) that Newsome was in Las Vegas between May and July 2010. On May 31, 2010, Newsome wrote Masters that he "just got home, just no orders at md prky that's the devil clerk store." (Ex. 35.) The government offered evidence that this was in reference to the Best Buy store on Maryland Parkway in Las Vegas. On June 5, 2010, Masters emailed Newsome: "so you think it would be worth it for me to head back out there? Vegas changed a lot since when I was first there. . .  I just don't know when it's going to get better." (Ex. 41.) Newsome responded that "I think if you came back me and you can definitely make something happen for real." (*Id.*)  On June 7, 2010, Newsome again asked "WHAT

HAVE YOU DECIDED BOUT COMING BACK." (Ex. 43.) Masters responded that he was and "[g]oing to be changing my number to 702 soon." (*Id.*) In fact, Masters also wrote that he was "gonna hit bestbuys across the country as I came towards there." (*Id.*) On June 18, 2010, Newsome wrote that he had a flat tire and had to walk on South Las Vegas Boulevard. (Ex. 138.) On July 27, 2010, Newsome asked Masters to call him and provided a phone number with 702 area code (Ex. 63), which was registered to an individual in Las Vegas, Nevada (Ex. 131).

### 3. Count 4

Count 4 involves the same offense as counts 2 and 3, but occurred on April 10-12, 2011. The chat log showing Masters was in Las Vegas covers conversations between Masters and TuzzTuzz from April 6 to April 12, 2011. The Western Union receipts offered as Ex. 9 shows Masters sent money from several Western Union locations in Las Vegas and Henderson, Nevada, between April 16-25, 2011. This evidence shows Masters was in the District of Nevada on April 10-12, 2011.

### 4. Count 5

Count 5, aggravated identity theft, involves possession of the means of identification of John Ballis on April 10, 2011. Ex. 19 shows that TuzzTuzz gave Masters Mr. Ballis' personal information, including his credit card and social security number. (Ex. 9 at bates number 2123-2125.) On that same date, an order was placed with Best Buy for a laptop and billed to Mr. Ballis but designated for pick up in Las Vegas by Masters. (Ex. 77.) Again, such evidence demonstrates that the offense was committed in the District of Nevada.

### 5. Count 6

Count 6 involves possession of access devices belonging to customers of the Aruba Hotel and Spa on May 2, 2011. Masters was arrested in Las Vegas, Nevada, on that date. Masters' car had a Nevada license plate. (Ex. 2.) His offense occurred in the District of Nevada.

///

### B. Usable Access Devices

Masters relies on *United States v. Onyesoh*, 674 F.3d 1157 to argue that the government must establish the access devices possessed by Masters were usable. *Onyesoh* involved the sentencing of a defendant convicted of possession of 15 or more unauthorized access devices. At sentencing, the government presented evidence that the defendant possessed 500 expired credit card numbers, and recommended a 12-level enhancement under the sentencing guidelines. *Id.* at 1158. The government arrived at this figure because a note to the sentencing guidelines assesses a minimum loss of $500 per device in the defendant's possession. *Id.* The district court agreed with the government's calculation, and applied the enhancement, determining that the expired credit card numbers constituted access devices without any further proof of their usability. *Id.* The Ninth Circuit reversed, holding that access devices must be usable and cannot be expired in order for the minimum loss to be factored into the sentencing calculus. *Id.* at 1159. Further, the court held that the government carries the burden of demonstrating proof of usability. *Id.* at 1160. It may do this by, for example, offering expert testimony or offering evidence that the defendant was prepared to use the number in combination with another device. *Id.*

Assuming *Onyesoh* applies in non-sentencing contexts, and viewing the evidence in the light most favorable to the government, the Court holds that the government has established that the access devices pertinent to each count meet the usability criteria. In support of count 1, the government offers Exs. 11 and 127B to show Masters purchased merchandise from Buy Best on April 26-29, 2011, using unauthorized access devices and the information from Chase Bank showing fraudulent purchases of access devices identified in the chat log between Masters and TuzzTuzz (Ex. 19) issued by Chase Bank. Count 2 involves gift cards issued by Whittaker Bank whose representative testified that her bank received complaints of fraud by customers who purchased gift cards starting in June 2010 to December 2010 when they discontinued the gift card program. Her testimony shows that gift cards were not only active and usable but were actually used.

Exhibit 48 is an email from Masters to Newsome that contains a list of gift cards, some of which had balances. Count 3 involves gift cards issued by Account Now whose representative testified that these cards were issued to customers who had to apply to purchase them. Such evidence shows that these access devices were usable. Count 4 involves the access devices issued by Chase Bank. Again, the government has offered evidence to show these devices were usable. (Ex. 19 and 127B.) Count 5 involves John Ballis' credit card which was used to purchase a laptop from Best Buy. (Ex. 77.) As to Count 6, the Aruba Hotel and Spa records show that numerous credit card numbers in Masters' possession had not yet expired at the time of his arrest in May 2011. (*See, e.g.,* Ex. 11 at bates numbers 682, 725, 729, 753, 755 759-761, 769, 788, 811, 820, 873, 876, 956.)

**IV.    CONCLUSION**

For the reasons discussed above, Masters' motion for judgment of acquittal is DENIED.

DATED THIS 6th day of November 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE