UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 2:12-cr-00145-MMD-GWF |
|---|---|
| Plaintiff-Respondent, | Related Case No. 2:13-cv-02053-MMD |
| v. | |
| RYAN MASTERS, | ORDER |
| Defendant-Petitioner. | |

**I.  SUMMARY**

Petitioner Ryan Masters was convicted of six counts of unauthorized access device related offenses and aggravated identity theft following a five-day jury trial. Before the Court is Masters' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("Motion"). (ECF No. 386.) The Court directed the government to respond and set a briefing schedule on the Motion after a stay pending appeal was lifted. (ECF No. 416.) The government has responded. (ECF No. 430.) Masters did not file a reply. For the reasons discussed herein, Masters' Motion is denied.

**II.  RELEVANT BACKGROUND**

The Superseding Indictment charged Masters with six counts: conspiracy to possess 15 or more access devices or unauthorized access devices and effecting fraudulent transactions with access devices that spanned from May 2010 to April 2012 (count one); possession of 15 or more access devices or unauthorized access devices on June 18, 2010 (count two), June 27, 2010 (count three), April 10, 2011 (count 4), and

May 2, 2011 (count six); and aggravated identity theft (count five). (ECF No. 49 at 1-6.) The Superseding Indictment charged co-defendant Jackie Lee Newsome with counts one through four.[1] (*Id.*) Newsome's arraignment was held at UMC Hospital on January 7, 2013. (ECF No. 125.)

On November 5, 2012, the jury returned a verdict of guilt on all counts. (ECF No. 104.) On November 4, 2013, after substituted counsel was appointed for Masters' trial counsel, Chris Rasmussen, and following several continuances requested by substituted counsel, the Court sentenced Masters to a total of 109 months.[2] (ECF No. 243.) Masters timely appealed. (ECF Nos. 244, 279.)

The Ninth Circuit Court of Appeals affirmed Masters' conviction and the Court's decision with respect to restitution and sentence, except for the Court's application of a two-level sentencing enhancement and remanded for resentencing. (ECF No. 323.) On remand, the Court sentenced Masters to 75 months. (ECF No. 385.) Masters appealed, challenging the terms of supervised release and conditions. (ECF Nos. 388, 406.) The Court of Appeals affirmed but vacated and remanded to conform the judgment entered with the oral pronouncement that supervised release for all counts would run concurrently. (ECF No. 406 at 3.) The Court entered a Third Amended Judgment consistent with the remand order. (ECF No. 410.)

On October 11, 2013, Newsome and the government stipulated to transfer this case with respect to Newsome to the presiding judge—Judge Dorsey—in the 2011 Case to allow the parties to file a joint plea agreement in a single change of plea and for Judge Dorsey to set a change of plea hearing for October 15, 2013, to permit him to testify at

---

[1]Newsome was not named in the original indictment. (*See* ECF No. 1.) Newsome was also a defendant in another case before the undersigned at the time, case no. 2:11-cr-223-MMD-CHW ("2011 Case"). That case was reassigned to Judge Gordon and then to Judge Dorsey as part of the court's normal practice of reassigning existing cases to newly appointed judges. (2011 Case, ECF Nos. 186, 191.) That case number was modified to reflect the reassignment to Judge Dorsey—2:11-cr-00223-JAD-CWH.

[2]The Court subsequently amended the Judgment to correct an error pursuant to Federal Rule Criminal Procedure 36. (ECF Nos. 271, 278.)

Masters' sentencing hearing. (ECF No. 218.) The parties noted the undersigned's limited availability for Las Vegas matters as a reason for the requested transfer to Judge Dorsey, who was able to accommodate the parties' request for an expedited change of plea hearing. (*Id.*) Judge Dorsey granted the stipulation (ECF No. 225) and the case as it related to Newsome was reassigned to Judge Dorsey (ECF No. 226).

**III.    LEGAL STANDARDS**

Section 2255 authorizes a sentencing court to grant habeas relief if it concludes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner seeking relief under section 2255 "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady,* 456 U.S. 152, 166 (1982). The alleged error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974). Moreover, "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady,* 456 U.S. at 167. "If a petitioner does not allege lack of jurisdiction or constitutional error, an error of law will not provide a basis for habeas relief unless that error resulted in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure." *Hamilton v. U.S.*, 67 F.3d 761, 763-64 (9th Cir. 1995) (*quoting United States v. Timmreck,* 441 U.S. 780, 783-84 (1979)) (internal quotation marks omitted).

The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to challenges based on ineffective assistance of counsel. First, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, a petitioner must show that "any deficiencies in counsel's performance
///

3

1 [were] prejudicial" by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 691-92, 694.

**IV.    DISCUSSION**

Masters asserts the following thirteen grounds[3]: (1) ineffective assistance of counsel ("IAC")—failure to seek severance or dismissal of conspiracy charge; (2) IAC—failure to address *Brady* violation; (3) prosecutorial failure to disclose favorable or exculpatory evidence; (4) prosecutorial misconduct—manipulation of the indictment; (5) prosecutorial misconduct—handling of plea negotiation of Newsome; (6) IAC—Masters' lack of participation at sidebar due to counsel's advice; (7) IAC—failure to request mental health evaluation; (8) the Court's lack of territorial jurisdiction; (9) IAC—counsel's failure to object to admission of government Exhibit 123; (9.1) IAC—failure to object during jury polling; and (10) the Court's error in imposing sentencing enhancement; (11) unwarranted sentencing disparity because Masters exercised his right to a trial; and (12) the Court's failure to address Masters' request for recusal. (ECF No. 386-1.) The government argues that all thirteen grounds are subject to the procedural default bar for which Masters cannot show "cause and prejudice" to excuse his default, and that setting aside procedural default, Masters cannot prevail on the merits. (ECF No. 430.)

The procedural default rule precludes a petitioner from raising a claim on collateral review if that claim was not raised on direct appeal unless the petitioner can show "cause and prejudice or actual innocence in response to the default." *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003). "[T]he cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim [on direct appeal]." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (internal quotation marks omitted). "If a petitioner succeeds in showing cause, the prejudice prong of the test

---

[3]Masters identified two ground 9. (ECF Nos. 386-1 at 9.) The government referred to them as grounds 9 and 9.1. (ECF No. 430 at 39.) The Court will adopt the same reference.

4

requires demonstrating 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007) (alteration in original) (quoting *Frady,* 456 U.S. at 170). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States,* 538 U.S. 500, 504 (2003).

The Court agrees with the government that all thirteen grounds raised in the Motion are procedurally defaulted. Masters was represented on appeal but did not raise the grounds asserted in his Motion in his appeal.[4] (*See* ECF No. 430-2.) Masters cannot show that some objective factor external to his defense impeded appellate counsel's efforts to raise his claims on appeal. Masters' claims are procedurally defaulted.

Even if Masters can show cause, he cannot satisfy the prejudice prong. The claimed errors are frivolous and do not rise to "error of constitutional dimensions." *See Braswell,* 501 F.3d at 1150. Because this analysis is so intertwined with review of the grounds raised on their merits, the Court will address them in turn below.

### A. Ground 1: IAC—Failure to Seek Severance

Masters posits that his trial counsel was ineffective for failing to seek to sever co-defendant Newsome who was also charged in the conspiracy count. (ECF No 386-1 at 3.) As the government pointed out, Newsome and Masters were also charged with three other substantive counts—counts two through four—for possessing unauthorized access devices. (ECF No. 49 at 4-6; ECF No. 430 at 16.) The Court would not have granted a request to sever the conspiracy count or sever Newsome from the conspiracy count because of these remaining counts and because the evidence supporting these counts

---

[4]Kevin R. Stolworthy was appointed to represent Masters after the Court granted substitution of trial counsel. (ECF Nos. 120, 123.) Mr. Stolworthy has represented Masters on all proceeding since, including Masters' two appeals and proceedings before this Court on remand.

were similar. Moreover, Masters cannot demonstrate that a joint trial resulted in undue prejudice.[5] Newsome was absent and did not raise any defense adverse to Masters. Nor can Masters point to any evidence offered against him that would have been excluded had Newsome been severed from the conspiracy count. *See United States v. Vasquez-Velasco,* 15 F.3d 833, 846 (9th Cir. 1994) ("In assessing whether joinder was prejudicial, of foremost importance is whether the evidence as it relates to the individual defendants is easily compartmentalized.").

### B. Ground 2: IAC—Failure to Address Brady Violation

Masters argues that trial counsel was ineffective for failure to address the government's failure to disclose evidence obtained from Whitaker Bank of names of potential victims and transactions relating to these victims in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). (ECF No. 386-1 at 3-4.)

Under *Brady,* a prosecutor must disclose evidence that is "material either to guilt or to punishment." *Brady,* 373 U.S. at 87. In *Giglio v. United States*, the Supreme Court extended *Brady*'s disclosure requirement to evidence that may impeach a government witness. 405 U.S. 150, 154-55 (1972). A defendant asserting a *Brady/Giglio* violation must satisfy three requirements: "(1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Williams,* 547 F.3d 1187, 1202 (9th Cir. 2008) (internal alterations and quotation marks omitted) (quoting *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999)).

Masters insists that "it would be prudent that the name(s) of victims or other transactional information relating to the access devices be disclosed to determine if, in fact, such access devices were (1) usable, (2) unauthorized, and (3) whether the card

---

[5]Rule 14 permits the court to order separate trials or "provide any other relief that justice requires" if joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a).

6

numbers involved were in fact possessed by the Defendant." (ECF No. 386-1 at 4.) However, Whitaker Bank was the victim of the access device fraud because it absorbed the losses, not the individual account holders. (ECF No. 430 at 11.) Evidence of individual Whitaker Bank clients' names and transactional information would not have been exculpatory or impeaching. The government thus was not required to disclose such evidence under *Brady.* Accordingly, Masters' counsel did not perform deficiently by failing to pursue the government's failure to disclose individual Whitaker Bank account holders and transactions relating to the use of the unauthorized access devices.

### C.    Ground 3: Prosecutorial Failure to Disclose Favorable or Exculpatory Evidence

This ground is premised on Masters' contention that the government violated its obligation to disclose the Whitaker Bank account holders' information as alleged in ground 2. (ECF No. 386-1 at 5.) However, the government was not required to disclose such information under *Brady. See* discussion *supra* Sect. IV(B). This ground is thus frivolous.

### D.    Ground 4: Prosecutorial Misconduct—Manipulation of Indictment

Masters' prosecutorial misconduct argument is premised in part on the government obtaining the Superseding Indictment after Masters rejected the government's initial plea offer. (ECF No. 386-1 at 6.) Even if the government sought the Superseding Indictment because Masters rejected the plea offer, Masters cannot show prosecutorial misconduct. "Bringing additional charges because a defendant is not willing to plea bargain constitutes permissible prosecutorial discretion." *United States v. Stewart,* 770 F.2d 825, 829 (9th Cir. 1985).

Masters also argues that the government never intended to prosecute Newsome but by adding Newsome to the conspiracy count the government was able to offer "'party admissions' of Newsome." (ECF No. 386-1 at 6.) However, the government would have been able to offer statements of unindicted co-conspirators under Fed. R. Evid. 801(d)(2)(E) even if it had not indicted Newsome.

///

The gist of Masters' argument is that Newsome was added to this case even though the government knew he was a fugitive and then after the government secured Masters' conviction, the government gave Newsome a substantial plea agreement. (ECF No. 386-1 at 6.) It is difficult to understand how the government's treatment of Newsome, who was indicted in this case and the 2011 Case, would amount to misconduct on the part of the prosecutor in his handling of this case against Masters. Masters' argument is simply frivolous.

### E. Ground 5: Prosecutorial Misconduct—Handling of Newsome's Plea Negotiation

As with ground 4 above, this ground relates to the government's prosecution of Newsome in this case and the 2011 Case. (ECF No. 386-1 at 6-7.) Masters speculates that the undersigned would not have accepted the plea agreement with Newsome which led the government to seek to transfer this case to Judge Dorsey for sentencing, and the Court abused its discretion in allowing for the transfer. (*Id.*) Masters is wrong. The 2011 Case was ultimately reassigned from the undersigned to Judge Dorsey because of the appointment of new judges and the Court's practice of reassigning existing cases to new judges. Moreover, it is not unusual for the Court to approve the parties' stipulation for a defendant like Newsome who was indicted in two separate cases to be sentenced by the same judge. In fact, the judge with the lower case number—Judge Dorsey in the 2011 Case—would have typically been assigned both cases for sentencing purposes if the parties so stipulated. In addition, at the time, the undersigned had limited availability to handle Las Vegas calendar while Judge Dorsey's calendar apparently allowed for an expedited change of plea hearing. (2011 Case, ECF Nos. 195, 196.)

### F. Ground 6: IAC—Masters' Lack of Participation at Sidebar

Masters waived his participation at sidebar conferences but argues that he did so in reliance on Rasmussen's advice and later told Rasmussen that he wished to participate after he realized he would not be restrained during trial. (ECF No. 386-1 at 7-8.)
///

1 Rasmussen does not recall such conversation and asserts that he would have brought the issue of Masters' request to participate at sidebar conferences had Masters raised it during trial.[6] (ECF No. 430-1 at 2.)

Masters cannot demonstrate that his counsel's performance resulting in his inability to participate at sidebar proceedings resulted in prejudice. Masters failed to point to any rulings made at sidebar conferences that would have turned out differently had he been present.

### G. Ground 7: IAC—Failure to Request Mental Health Evaluation

Masters argues that his trial counsel was ineffective for failing to request a mental health evaluation before trial since such evaluation "would have weighed heavily on Defendant's intent." (ECF No. 386-1 at 8.) However, Masters cannot demonstrate that counsel's failure to obtain a mental health evaluation resulted in prejudice. He does not identify what such a mental health evaluation would have shown, let alone that his mental health would have negated the element of intent. Indeed, as Rasmussen explained, the evidence showed Masters "was aware of his intent as he attempted to cover his tracks by traveling around in his vehicle to find unsecured wifi networks within residential neighborhoods to conduct his transactions among many other behaviors to mask his identity." (ECF. No. 430-1 at 2.)

### H. Ground 8: The Court's Lack of Territorial Jurisdiction

Masters contends the United States does not possess territorial jurisdiction to prosecute him and the Court is therefore without jurisdiction to impose sentence. The conduct that gave rise to the offenses in the Superseding Indictment occurred in part in Las Vegas, Nevada. Masters' argument of lack of jurisdiction is frivolous.

///

///

---

[6]Based on the Court's observation of Masters' interactions with Rasmussen during trial and Masters' conduct in proceedings before this Court where Masters has not been hesitant to speak on his own behalf, it seems to the Court that Masters would have asked the Court to allow him to participate at sidebar had he changed his mind about his waiver.

### I. Ground 9: IAC—Failure to Object to Admission of Exhibit 123

Masters argues that Rasmussen was ineffective for failing to object to government Exhibit 123, a spreadsheet prepared by Angela Cross to show fraudulent Best Buy transactions. (ECF No. 386-1 at 9.) Masters contends that the exhibit does not satisfy the "best evidence rule." (*Id.*) Cross testified that she created Exhibit 123 to show a summary of three years of fraudulent orders based on records kept by Best Buy. (ECF No. 150 at 230-31.) Masters cannot show that trial counsel's performance was deficient because he failed to object or that prejudice resulted because Exhibit 123 was properly admitted under Fed. R. Evid. 1006.

### J. Ground 9.1: IAC—Failure to Object During Jury Polling

Masters contends that counsel was ineffective for failing to object when one of the jurors was "reluctant to affirm" the verdict during jury polling post-verdict. (ECF No. 386-1 at 9.) Masters appears to rely on the notation in the transcript of "Pause in the proceedings." (ECF No. 153 at 59.) Such notation does not support Masters' contention that a juror was reluctant to affirm the verdict. Rasmussen states that he has no memory of any hesitation by any juror. (ECF No. 430-1 at 3.) The Court similarly cannot recall that any juror hesitated. Had a juror shown reluctance as Masters claims, the Court would have made further inquiry. Masters thus cannot show that trial counsel performed deficiently by failing to object.

### K. Ground 10: Error in Imposing Sentencing Enhancement

Masters challenges the Court's application of the Sentencing Guidelines by adding a 14-level loss enhancement. (ECF No. 386-1 at 10.) The Court rejected this argument at sentencing and will not reconsider. (ECF No. 261 at 192-93.)

### L. Ground 11: Unwarranted Sentencing Disparity

Masters posits that he was given a lengthier sentence than Newsome because he exercised his right to a jury trial while Newsome was given "an extremely disproportionate sentence" for having pled guilty and cooperating with the government. (ECF No. 386-1 at

///

10-11.) Masters' argument is without merit. The Court imposed a sentence slightly below the Sentencing Guideline range after considering all of the factors under 18 U.S.C. § 3553(a), including sentencing disparity, and gave detailed explanations for its decision. (ECF No. 261 at 211-219.) The Court did not punish Masters for exercising his right to a trial.

### M. Ground 12: Masters' Request for Recusal

Masters complained that the undersigned conspired against him, exhibited bias, and permitted the government to engaged in "judge-shopping" by allowing the transfer of Newsome's case to Judge Dorsey. (ECF No. 386-1 at 11-12.) This ground is also frivolous. Masters' disagreement with the Court's rulings is not a basis for him to seek to vacate his sentence.

In sum, Masters' claims are procedurally defaulted and he cannot show cause or prejudice to excuse his default. Setting aside procedural default, Masters' claimed errors are frivolous and do not rise to "error of constitutional dimensions" to warrant relief under 28 U.S.C. § 2255. *See Braswell,* 501 F.3d at 1150.

### V. CERTIFICATE OF APPEALABILITY

Before Masters can appeal the Court's decision to deny his Motion, he must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22; 9th Cir. R. 22-1; *United States v. Washington*, 653 F.3d 1057, 1059 (9th Cir. 2011). To receive such a certificate, a petitioner must make "'a substantial showing of the denial of a constitutional right' as to each issue the petitioner seeks to appeal." *Washington*, 653 F.3d at 1059 (quoting 28 U.S.C. § 2253(c)(2), (3)). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court determines that reasonable jurists would not find its reasoning debatable or wrong. Thus, the Court will deny a certificate of appealability.

///

///

11

**VI. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Ryan Masters' motion to vacate (ECF No. 386) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk is directed to enter judgment in accordance with this order and close this case.

DATED THIS 7th day of January 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE